In re Fredrick Edward SMITH and Cheryl Lynn Smith, Debtors.

Maureen Gaughan, Chapter 7 Trustee, Appellant,

v.

Fredrick Edward Smith; Cheryl Lynn Smith, Appellees.

BAP No. AZ–05–1163–SKMO.

Bankruptcy No. 02–19420–GBN.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 22, 2005.

Filed April 7, 2006.

Paul Sala, Allen & Sala, P.L.C., Phoenix, AZ, for Maureen Gaughan, Trustee.

Donald W. Powell, Carmichael & Powell, P.C., Phoenix, AZ, for Frederick and Cheryl Smith.

Before: SMITH, KLEIN and MONTALI, Bankruptcy Judges.

## OPINION

SMITH, Bankruptcy Judge.

The chapter 7 trustee, Maureen Gaughan, appeals a final order of the bankruptcy court, entered April 11, 2005, which effectively denied her motion to compel the turnover of certain homestead funds claimed exempt by debtors, Frederick Edward and Cheryl Lynn Smith (collectively, "Debtors"). The trustee timely filed a notice of appeal on April 20, 2005. We REVERSE.

## I. FACTS

The facts are undisputed. On October 22, 2002, Debtors sold their residence and deposited the net proceeds into a bank account. On December 3, 2002, they filed a chapter 7[1] petition. At the time of the filing, approximately $19,482 remained in the account. In their schedules, Debtors claimed an exemption in the proceeds pursuant to Arizona Revised Statute ("A.R.S.") § 33–1101(C). The trustee objected to the exemption on the ground that Debtors had provided insufficient documentation to support the claim. The objection included the following notice:

> Notice is given that the exemption will be denied as recommended by the Trustee on or before 20 days from service unless the debtor sends sufficient documentation to the Trustee *and* receives from the Trustee a withdrawal of the objection *OR* the debtor files and serves a response to the Objection with the Clerk of the Court .... If the Debtor

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated prior to the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, Apr. 20, 2005, 119 Stat. 23.

timely files and serves a response to the objection, the Trustee will request a hearing from the Court.

Debtors timely filed and served a response, but the trustee did not withdraw the objection or request a hearing. Instead, on February 7, 2005, after the objection to exemption deadline had passed, the trustee filed a motion to compel turnover of the sale proceeds as nonexempt property of the estate (the "turnover motion"). The trustee argued that, in order to preserve the exempt status of the sale proceeds under applicable Arizona homestead exemption law, A.R.S. § 33–1101(C), Debtors were required to reinvest the proceeds into another homestead within eighteen months of the sale. According to the trustee, because the homestead property was sold on October 22, 2002, the proceeds were rendered nonexempt by operation of law as of April 22, 2004.[2]

Debtors responded that the trustee failed to provide adequate notice of the objection to the exemption. Specifically, the objection did not mention the eighteen-month reinvestment deadline. They urged that if the turnover motion was to be construed as an objection to the homestead exemption, it was filed ten months after the exemption deadline, and therefore, untimely.

The hearing was held on April 5, 2005, at which time, the bankruptcy court issued the following oral ruling:

> Here, I recognize the Trustee may not have been in a position to argue that this exemption was invalid because the 18–month window had not lapsed. To the

extent that the Trustee wanted to follow this matter along and preserve any objections, she could have been able to preserve that objection, possibly, by timely filing a motion to extend the deadline for filing an objection to the homestead. Or she could have filed a conditional objection noting as the Court indicated in *Earnest*[3] that as of the petition date, it couldn't be determined whether the Debtors' homestead would be preserved because the 18–month reinvestment window has lapsed. But unlike *Earnest,* here, there was little to suggest that the Trustee had given the Debtors' notice of her continuing interest in the homestead.

> I take the Trustee's comment here, and I agree with it. These Debtors are essentially in a position that they would not be in, as favorable position, had they not filed a bankruptcy. But, that is the result of existing law. I'm constrained by the Bankruptcy Appellate Panel's learned decisions, I'm—and the Supreme Court's decision and Rule 4003(b). So I don't believe the Trustee's met her burden. And as accordingly, I'm going to deny her turnover motion.

Transcript of Proceedings, April 5, 2005, p. 14.

The trustee appeals.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. § 1334 and §§ 157(b)(1) and (b)(2)(B). We have jurisdiction under 28 U.S.C. § 158(c).

---

**2.** The trustee has not sought all of the proceeds of the sale of the residence, but only the amount on hand as of the expiration date of the exemption. Thus, we assume—without deciding—that debtors' use of a portion of the proceeds during the period they were exempt was permissible. We assume further that had

Debtors expended *all* of the proceeds before April 22, 2004, the trustee would have had nothing to seek to recover.

**3.** *In re Earnest,* 42 B.R. 395 (Bankr.D.Or. 1984).

## III. ISSUE

Whether the bankruptcy court erred in denying the trustee's motion to compel turnover of proceeds from the sale of Debtors' homestead on the ground that she failed to properly object to the exempt status of the proceeds.

## IV. STANDARD OF REVIEW

 Questions regarding the right of a debtor to claim exemptions are questions of law reviewed *de novo*. *In re Arnold,* 252 B.R. 778, 784 (9th Cir. BAP 2000); *In re Goswami,* 304 B.R. 386, 389 (9th Cir. BAP 2003); *In re Kim,* 257 B.R. 680, 684 (9th Cir. BAP 2000). "Whether property is included in a bankruptcy estate is a question of law also subject to *de novo* review." *In re Kim,* 257 B.R. at 684; *In re Central Ark. Broad. Co.,* 68 F.3d 213, 214 (8th Cir.1995).

## V. DISCUSSION

The trustee's position on this appeal is straightforward. She asserts that the sale proceeds from Debtors' residence lost their exempt status when they failed to reinvest the proceeds into another homestead within eighteen months of the sale in accordance with Arizona law, and therefore, became property of the estate. In support of her position, the trustee relies on the Ninth Circuit's decision in *In re Golden,* 789 F.2d 698 (9th Cir.1986), interpreting California homestead law, as well as an Oregon bankruptcy decision, *In re Earnest,* 42 B.R. 395 (Bankr.D.Or.1984). Both cases hold if state law requires the reinvestment of sale proceeds of a homestead within a statutory period, and debtor

fails to do so within that time, the proceeds are deemed nonexempt and become property of the estate.

Debtors argue that the holdings in *Golden* and *Earnest* are inapposite because, unlike the homestead provisions of California and Oregon, Arizona does not require that the sale proceeds be reinvested into another homestead. According to Debtors, under Arizona law, there is no clear language conditioning the allowance of the exemption on a requirement to be met over a period of time. We disagree.

The commencement of a bankruptcy case creates an estate comprised of all legal and equitable interests in property (including potentially exempt property) of the debtor. 11 U.S.C. § 541. A debtor in bankruptcy is entitled to exempt certain assets from the estate. 11 U.S.C. § 522. Arizona has elected to "opt out" of the federal exemption scheme; therefore, Arizona law governs homestead exemptions. A.R.S. § 33–1133.[4]

Debtors claimed an exemption in the proceeds of their pre-petition sale of their homestead under A.R.S. § 33–1101(C), which provides

> The homestead exemption, not exceeding the value provided for in subsection A, automatically attaches to the person's interest in identifiable cash proceeds from the voluntary or involuntary sale of the property. The homestead exemption in identifiable cash proceeds continues for eighteen months after the date of the sale of the property or until the person establishes a new homestead

---

4. A.R.S. § 33–1133 provides

A. Nothing in this article shall be construed to displace other provisions of law which afford additional or greater protection to a debtor's property.

B. Notwithstanding subsection A, in accordance with 11 U.S.C. 522(b), residents

of this state are not entitled to the federal exemptions provided in 11 U.S.C. 522(d). Nothing in this section affects the exemptions provided to residents of this state by the constitution or statutes of this state.

with the proceeds, whichever period is shorter. Only one homestead exemption at a time may be held by a person under this section.

Although there are very few cases interpreting the reinvestment provision of A.R.S. § 33–1101(C), those that have touched on the issue support the trustee's position that reinvestment of the proceeds is required in order to maintain exempt status. In *In re Strasser,* 303 B.R. 841, 848 (Bankr.D.Ariz.2004), the bankruptcy court, in dicta, noted that sale proceeds "do not qualify as exempt homestead proceeds [where] debtor fail[s] to reinvest them in a new homestead within 18 months as the statute [A.R.S. § 33–1101(C) ] expressly requires." And another court observed,

> the homestead exemption automatically attaches to the individual's equity interest in identifiable cash proceeds from the sale ... [and] *only continues* for an 18–month period after the sale or until the individual files a new homestead declaration, whichever period is shorter.

*In re Elia,* 198 B.R. 588, 599 (Bankr.D.Ariz.1996)(emphasis added).

■ These cases support a plain meaning interpretation of the statute, i.e., that sale proceeds only remain exempt for the earlier of eighteen months or until they are reinvested into another homestead. *See In re Plant,* 300 B.R. 22, 23 (Bankr. D.Ariz.2003) ("Since homesteads are purely creatures of statute, the statute must be reviewed to determine the meaning of homestead; and if the statutory language is plain, the courts must follow it.").

Contrary to the analysis posed by Debtors, the statute simply cannot be read to create a permanent exemption in the sale proceeds, absent reinvestment in another homestead. Because Debtors failed to use the proceeds for the purchase of a new

homestead, or otherwise, the exemption lapsed automatically by operation of law.

Debtors nevertheless maintain that even if the proceeds became nonexempt at some point after the commencement of the case, such post-petition transformation is of no consequence because the only relevant date for determining their right to the exemption is the date of the bankruptcy filing. On this point, Debtors refer us to *In re Kim,* 257 B.R. 680 (9th Cir. BAP 2000), *In re Herman,* 120 B.R. 127 (9th Cir. BAP 1990), and *In re Graziadei,* 32 F.3d 1408 (9th Cir.1994).

In *Kim,* we indeed articulated the general rule that exemption rights are determined as of the petition date. 257 B.R. at 685. We also noted that "[u]nsupported by legal authority and contravened by the plain language of the Code, [a] debtor's attempt to carve out an exception to the well-established law that exemption rights are determined on the petition date must be rejected." *Id.* at 685 (quoting *In re Wolf,* 248 B.R. 365, 368 (9th Cir. BAP 2000)).

■ Debtors' lament is certainly understandable as exemptions are *generally* determined as of the petition date. However, where an applicable state law requires compliance with a pre-condition to maintain exempt status, the Ninth Circuit has clearly held otherwise. Under facts similar to those in this case, the Ninth Circuit in *Golden,* interpreting California's exemption law, held

> California law requires reinvestment in order to prevent the debtor from squandering the proceeds for nonexempt purposes. Acceptance of the debtor's position would frustrate the objective of the California homestead exemption and the bankruptcy act itself, which limits exemptions to that provided by state or federal law. Applying California law, we therefore hold that when the debtor

fails to reinvest homestead proceeds within a period of six months in which the debtor has control of those proceeds, *the proceeds should revert to the trustee.* *In re Golden,* 789 F.2d at 700 (emphasis added).

Similarly, in *Earnest,* an Oregon bankruptcy court found that property was to be exempt under the state law that is applicable on the date of the filing of the petition. *In re Earnest,* 42 B.R. at 398. Accordingly, if applicable state law requires certain conditions to be met as of the petition date, such as reinvestment, these conditions must be met in order to maintain exempt status. As the *Earnest* court describes,

> The Oregon exemption law for homestead proceeds contains two conditions. The language of these conditions was as much a part of the applicable law on the date [the debtors] filed their bankruptcy petitions as is the language actually granting the exemption. These conditions can be labeled either conditions precedent or conditions subsequent. Under either approach the court *cannot* avoid, after a year's passage, a *judicial inquiry* to determine if the debtor either receives or keeps, as the case may be, the exemption. [The debtors] would like the court to treat the conditions as subsequent, to grant them the exemption, and then to deny itself, because of the bankruptcy filing, the power to later inquire if the conditions were met. This court finds *nothing* in the Bankruptcy Code that requires or allows it to fragment the state law in this manner to grant a benefit to the debtors they would not have received if they had not filed bankruptcy.

*Id.* at 398–99 (emphasis added).

In an attempt to overcome the *Golden* holding, Debtors assert that the Arizona homestead provision is more closely analogous to Texas law, which does not require reinvestment. They refer this panel to *In re Harlan,* 32 B.R. 91 (Bankr.W.D.Tex. 1983). In *Harlan,* the debtors sold their homestead within days of filing their bankruptcy petition and did not reinvest the proceeds within six months of the sale as required by the applicable Texas homestead exemption. The court rejected the objecting creditor's argument that any portion of the sale proceeds not reinvested at the expiration of the six-month period should be deemed nonexempt and, instead, held that because the debtors' exemption rights were fixed as of the date of the petition, the proceeds remained exempt beyond the six-month period—even if the debtors did not reinvest the funds into another homestead. *In re Harlan,* 32 B.R. at 93.

Significantly, *Harlan* has been overturned by the Fifth Circuit's decision in *In re Zibman,* 268 F.3d 298 (5th Cir.2001), a case also involving pre-petition homestead sale proceeds held by bankruptcy debtors. In a very detailed and well-reasoned opinion, the Fifth Circuit declined to follow the ruling in *Harlan* and adopted the reasoning of *Golden* and *Earnest:*

> [The lower courts] did not apply the *entire* Texas law that is applicable in the instant case. Instead, their denial of the Trustee's objection to the exemption in the instant case, "freezing" the exemption for the proceeds simply because it was in effect at the date the petition was filed, effectively read the 6–month limitation out of the statute, and transformed an explicitly limited exemption into a permanent one.
>
> . . .

In a case virtually identical to this one, the Ninth Circuit rejected the debtor's similar attempt to enlarge the homestead exemption, saying that, "[a]cceptance of the debtor's position would frus-

trate the objective of the California homestead exemption and the bankruptcy act itself, *which limits exemptions to that provided by state or federal law.*" [citing *Golden* at 700] ... When a debtor elects to avail himself of the exemptions the state provides, he agrees to take the fat with the lean; he has signed on to the rights (like the post-petition right to file in *Myers*) but also to the limitations (like the temporal element of the reinvestment feature of California's homestead exemption in *Golden*) integral in those exemptions as well. In Texas, the 6–month limitation is inextricably intertwined with the exemption the state has chosen to provide for proceeds from the sale of the homestead. As an Oregon bankruptcy court so aptly observed, "This court finds nothing in the Bankruptcy Code that requires or allows it to fragment the state law in this manner to grant a benefit to the debtors they would not have received if they had not filed bankruptcy." [citing *In re Earnest* at 399].

*In re Zibman,* 268 F.3d at 304 (emphasis in original).

■ At the time the bankruptcy was filed, the estate held a contingent, reversionary interest in the sale proceeds. Once Debtors failed to reinvest the proceeds into another homestead within the statutory period, the entire interest reverted to the bankruptcy estate. In other words, the proceeds, stripped of their exempt status, transformed into *nonexempt* property, i.e., property of the bankruptcy estate, by operation of law. At that point, there was no need for the trustee to pursue an objection to the claimed exemption because no such exemption existed. Accordingly, the course of action taken by the trustee, the prosecution of the turnover motion, was proper.

■ Debtors also contend that even if the proceeds were no longer exempt, the trustee nevertheless failed to file a timely objection that put Debtors on notice that the estate had a continued interest in the sale proceeds. The Ninth Circuit has already addressed this issue in *Golden,* holding that "[b]ecause the exemption remained in effect during the [allotted reinvestment] period, and the trustee had no right to claim the proceeds during that period, [there was] no reason for requiring that he notify the debtor of a claim *not yet in existence.*" 789 F.2d at 701 (emphasis added).

The bankruptcy court incorrectly found that the trustee failed to timely object to the exemption or to take any action to preserve the right to object. At the time the petition was filed, the claimed homestead exemption was valid and the trustee had no legal basis to object to the exemption. Only after the exemption expired by operation of law did the trustee have a legal ground for taking action against the newly nonexempt property.

■ Further, Debtors' argument that they should have been noticed of the trustee's continued interest in the homestead proceeds also fails. The Arizona homestead provision unequivocally required Debtors to reinvest the proceeds. As such, Debtors "could not have reasonably relied upon the trustee's silence as an indication of a permanent exemption." *Id.* at 701.

## VI. CONCLUSION

We conclude that 1) Debtors' exemption in the sale proceeds was contingent upon reinvestment of the proceeds in a homestead within the statutorily prescribed period; 2) by virtue of Debtors' failure to reinvest the funds in another homestead, the proceeds became nonexempt, and therefore, property of the bankruptcy es-

tate subject to the control of the trustee; and 3) the trustee properly moved to compel turnover of the money to the estate. We reverse.

KLEIN, Bankruptcy Judge, concurring.

I join the majority decision with some reluctance because there is considerable common sense in the bankruptcy judge's ruling and join only because I am unable to distinguish the California exemption that was addressed in *England v. Golden (In re Golden)*, 789 F.2d 698 (9th Cir. 1986), from the similar Arizona exemption involved in this appeal. Although there is merit to the view that *Golden* is binding law of the circuit only with respect to California exemptions because (even in the case of identically-worded exemptions) the respective state supreme courts might construe them differently, a decent respect for precedent and predictability counsels in favor of applying *Golden*.

The issue is difficult, and *Golden* may not have been correctly decided in 1986. The basic reason for pause is that if funds that are conditionally exempt following the sale of a homestead are spent during the period of conditional exemption for some non-homestead purpose, there is no reason to think that a judgment creditor could force the expenditure to be undone. Moreover, if the conditionally-exempt funds are in the debtor's bank account during the bankruptcy, the rule of *Golden* creates an incentive for the trustee and creditors to force the case to remain open until after the relevant time expires. In such circumstances, the debtor could be in the difficult and disadvantageous position of needing to purchase a homestead property during the bankruptcy, notwithstanding the general reluctance of mortgage lenders to deal with consumers until after a bankruptcy is finished.

I must confess, however, that the perverse incentive that I perceive in *Golden* has not frequently manifested itself in bankruptcy cases in the ensuing decades. Either trustees are not unduly prolonging cases for that reason or they are permitting conditionally-exempt funds to be abandoned as being of inconsequential value and benefit to the estate. In other words, the opportunity for abuse following upon *Golden* has remained more theoretical than real.